POOTZ v. QUINN.

1. APPEAL AND ERROR—SETTLEMENT OF BILL OF EXCEPTIONS—EX-
   TENSION OF TIME—STIPULATION.
   Counsel by written stipulation, and without procuring the ste-
   nographer's certificate that transcript of testimony necessary
   for preparation of a bill of exceptions or settled case has been
   ordered, may extend the time for settling a bill of exceptions
   not exceeding the time limited by statute (3 Comp. Laws 1929,
   § 14313; Court Rule No. 66, § 2 [1945]).

2. SAME—PERFECTING APPEAL.
   Plaintiffs properly and timely perfected their appeal where they
   filed stipulation and procured order for extension of time
   within which to settle bill of exceptions within 20 days after
   date of filing claim of appeal (3 Comp. Laws 1929, § 14313;
   Court Rule No. 66, § 2 [1945]).

3. CONTRACTS—CONSTRUCTION  CONTRACTS—PAYMENT—DEFAULTING
   PARTY.
   Contract for converting an old house and streetcar diner into
   a restaurant, which contained stipulations as to amount, but
   none as to the time or terms, of payment, and supplementary
   contract, entered into after a substantial part of the work
   was done, stating the amount necessary to finish job, every-
   thing included, is construed as requiring pro rata instalments,
   where payments were made from time to time after completion
   of portions of the work, hence where defendant contractor
   walked off the job before it was finished because plaintiffs
   failed to pay him balance under supplementary contract, de-
   fendant was the party in default.

4. SAME—SUPPLEMENTAL CONTRACT—MERGER OF ITEMS.
   Where, after a substantial amount of work had been done under
   contract for remodelling an old house and streetcar diner, the
   parties entered into a supplemental contract purporting to es-
   tablish an all-inclusive balance for the work yet to be done,
   allowance of $75 for installation of glass as an extra item is

reversed where such item must be regarded as merged in the new balance and installation had been made before the supplemental contract was entered into.

5. INJUNCTION—JURISDICTION—VALUE OF PERSONALTY.
   Bill for injunction against defendant's removal of his materials from site of building construction on plaintiffs' property was properly dismissed where such materials were not unique, were obviously of small value and bill contained no allegation that value exceeded $100 (3 Comp. Laws 1929, § 13943).

6. EQUITY—JURISDICTION—QUESTIONS OF FACT—REMEDY AT LAW.
   Parties to dispute over uncompleted building contract are relegated to relief at law where neither allegations nor proof sustain retention of jurisdiction in equity but do present questions of fact as to plaintiffs' damages and value of defendant's materials retained by plaintiffs (3 Comp. Laws 1929, § 13943).

7. COSTS—EQUITY—REMEDY AT LAW.
   No costs are allowed either party where case was brought in chancery but was not one properly in equity, relief had been granted defendant on his cross bill, and both parties are now relegated to an action at law.

Appeal from Kent; Souter (Dale), J. Submitted April 15, 1944. (Docket No. 54, Calendar No. 43,687.) Decided June 27, 1947.

Bill by Stephen Pootz and another against Ray Quinn for an injunction restraining the removal of certain property, an accounting and money damages. Cross bill by defendant against plaintiffs for an accounting and other relief. Decree for defendant. Reversed and bill and cross bill dismissed without prejudice to right of transfer to law side of court.

*Mitts & Smith,* for plaintiffs.

*John M. Dunham,* for defendant.

BUTZEL, J. Plaintiffs are partners in the restaurant business in the city of Grand Rapids. In Octo-

ber, 1945, plaintiff Norma Werner acquired certain property in that city upon which was located an old house and a streetcar diner. Plaintiffs desired to convert the premises into a cafeteria and, accordingly, they entered into negotiations for the necessary repairs and alterations with the defendant, a contractor and a personal friend of plaintiff Werner. On November 9, 1945, a written contract was signed by defendant and Norma Werner wherein the defendant agreed to perform the necessary work and supply the required materials for a "total cash price" of $2,350. The contract was prepared on a form bearing the letterhead of defendant and was written in defendant's own hand. The blank lines of a provision reading, "To be paid by you according to the following terms ————," were not filled in, nor was any other provision made therein as to the time or terms of payment. It is undisputed that certain additional items were requested by plaintiffs after the signing of this contract as the result of which the parties agreed on November 16, 1945, to increase the total contract price by $150.

Defendant undertook to do the necessary work and from time to time, as the work progressed, requested advances of money from plaintiffs. From November 13, 1945, to December 26, 1945, six payments were made totaling $2,457. Subsequently, defendant informed plaintiffs that he would be unable to complete the project at the contract price. After some discussion, a supplemental agreement was entered into on December 29, 1945, the purpose of which was to include in one overall sum the balance remaining on the old contract plus the price of certain additional items requested by plaintiffs since the previous readjustment. At that time plaintiffs paid defendant the sum of $250. The

supplemental agreement, which was drawn by plaintiff Werner on the back of a menu card and signed by defendant, contained the following:

"Disregard *money* balance on old contract
Total finish (*sic*) job, everything included, the above mentioned and according to old contract is $700 Seven Hundred Dollars.
Balance $450.

12/29/1945

Signed,
RAY QUINN."

An additional $250 was paid defendant on January 4, 1946, leaving a final balance of $200. On January 10, 1946, defendant requested that plaintiffs advance him the further sum of $200 with which to meet his payroll. Upon plaintiffs' refusal to advance this sum, defendant walked off the job taking some construction materials with him. On January 11, 1946, plaintiffs obtained a temporary injunction restraining defendant from removing any more materials from the premises. They also filed the bill of complaint in the instant suit seeking to have the temporary injunction made permanent, asking damages for defendant's failure to complete the job, and further requesting that the court order defendant to pay wages due workingmen employed by him on this project.

Defendant filed an answer and cross bill, claiming that although the contract was silent as to the time and terms of payment, nevertheless, it was agreed that plaintiffs were to advance the necessary funds to carry on the job; that he was ready and willing to complete the work, but that plaintiffs breached the contract by refusing to advance the sum of money requested of them on January 10, 1946; and that plaintiffs further prevented him from completing the job by locking him out of the premises. He

admitted that he owed wages to his carpenters for work performed on the project but stated that this had resulted from plaintiffs' refusal to make payments to him as promised. He asked that the injunction be quashed, that he be permitted to obtain possession of his own property on the premises, and that plaintiffs be required to pay whatever sum the court should determine was due him.

Plaintiffs testified that after the supplemental agreement of December 29, 1945, was entered into, they made no requests of defendant for further changes or alterations. This is denied by the defendant. Plaintiff Pootz testified that it had been necessary to spend more than $600 to prepare the premises for occupancy after defendant abandoned the job. The contractor who had been engaged by plaintiffs to complete the work testified that in his opinion an additional $240 would be required to finish the job properly. On cross-examination defendant made the following statement:

"It is possible that if I had finished the job it would have taken more than $200 to do it. After I had used this $200 I contemplated getting more money from her to finish the job. I don't know what I would have done if she hadn't paid me more money than was agreed to at the time I entered into this second contract of $700. I didn't get that far. I went off this job because she did not do as she had agreed to—to furnish money for everything that was needed."

Defendant further testified that he had since paid off all of the carpenters and that there were no lumber bills outstanding.

The trial court found that the parties, by their conduct, had placed their own interpretation upon the agreement and that the evidence established that it was agreed before the work was started that the necessary funds would be furnished by plaintiffs

to carry on the job. The court held that plaintiffs had breached their agreement with the defendant by failing to advance the sum of $200, requested by defendant on January 10, 1946; that defendant was therefore justified in quitting the job, and that by so doing he did not lose his right to recover under the agreement with plaintiffs, nor was he liable for the added cost of completing the job. The court further found that at plaintiffs' request defendant had installed certain glass in the dining car which was not included in the agreement and which had cost defendant $75. A decree was entered dismissing plaintiffs' bill of complaint and awarding defendant the sum of $279 (the court apparently intended $275). The decree directed plaintiffs to surrender to defendant any and all items of defendant's personal property in their possession. Plaintiffs appeal from that decree.

It is defendant's contention on appeal that this Court is without jurisdiction in the case because appellants did not procure and file a certificate of the court stenographer and, further, that there was no extension of time within 20 days following notice of entry of the decree. The court rule provides that:

"The party desiring an extension shall produce a transcript of the testimony necessary to the preparation of a bill of exceptions or a settled case, or a certificate from the stenographer of the trial court stating that appellant has ordered a transcript of the testimony necessary for the preparation of a bill of exceptions or settled case, that payment therefor has been made or secured, and that the same will be furnished as soon as possible by said stenographer." Court Rule No. 66, § 2 (1945).

In *Andres* v. *Washtenaw Circuit Judge,* 287 Mich. 412, this Court held that appellants had not lost their rights by neglecting to file a certificate of the

court stenographer, since producing it to the court fulfilled the requirements of the rule. The calendar entries in the instant case indicate that the decree of the lower court was entered on June 4, 1946, that claim of appeal, notice and proof of service were filed on June 22, 1946, and that the time for settling the record was extended by stipulation and order entered on July 10, 1946. Counsel by written stipulation, and without procuring the stenographer's certificate, may extend the time for settling a bill of exceptions not exceeding the time limited by statute.* *Brevoort* v. *Wayne Circuit Judge,* 203 Mich. 388; *Reynick* v. *Saginaw Circuit Judge,* 210 Mich. 563. Court Rule No. 66, § 2 (1945), also provides:

"The time noticed for such settlement shall be within 20 days after the date of filing the claim of appeal when the appeal is of right, * * * or within such further time, not exceeding 1 year after entry of judgment, as may be ordered by the trial judge, upon motion filed within said 20 days and duly noticed for hearing."

The "said 20 days" is an obvious reference to the "20 days after the date of filing the claim of appeal," and not, as contended by appellee, 20 days following notice of entry of the decree. Plaintiffs properly and timely perfected their appeal.

A close reading of the record fails to satisfy us that the parties had agreed before the work was started that all necessary funds would be furnished by plaintiffs to carry on the project, although it is possible that such may have been the true agreement. To arrive at that determination, however, it is necessary to negate completely the purpose and effect of the two writings, particularly that of De-

---

* See 3 Comp. Laws 1929, § 14313 (Stat. Ann. § 27.1042).—Reporter.

.cember 29, 1945, which expressly provided that the newly-arrived-at balance represented the "total finish (*sic*) job, everything included." The trial judge found that the parties by their conduct placed their own interpretation upon their agreements, and that they paid very little, if any, attention to the writings. It is noted, however, that in each instance work was performed by defendant before any payments were made. After the agreement of December 29, 1945, was signed, plaintiffs paid two equal instalments of $250. It would appear to us, therefore, that the more reasonable interpretation to be given the supplementary agreement, in view of the conduct of the parties, is that pro rata instalments were contemplated. Defendant testified, as hereinbefore quoted, that he intended getting more money from plaintiffs to finish the job after the payment of the "final" instalment of $200. This substantiates plaintiffs' claims that the value of the work remaining to be performed by defendant when he walked off the job was considerably in excess of $200. If any weight is to be given the supplemental agreement, this would seem to indicate that defendant was the party in default.

It is evident that the trial judge was persuaded that plaintiffs had made additional demands upon defendant after the latter had signed the memorandum of December 29, 1945. Thus the court allowed as an item of defendant's damages the sum of $75 for the installation of certain glass in the dining car, which item, so the court found, was not called for by the agreement. The record discloses, however, that the glass had been installed prior to December 29, 1945, the date of the supplemental agreement which purported to establish one all-inclusive balance and in which no reference was made to said item. Again, if any weight is to be given the supple-

mental agreement, the reasonable inference is that the parties regarded the item as merged in the new balance. If defendant actually did additional work at plaintiffs' request after that date, the proofs of same are not to be found in the record.

Equity jurisdiction was originally sought in this suit to enjoin defendant from removing materials from the construction site; and plaintiffs in their bill of complaint also requested money damages. A temporary injunction was granted; and after a hearing, the bill was dismissed and a decree entered awarding defendant money damages on his cross bill. The decree further ordered plaintiffs to surrender to defendant any and all items of defendant's personal property in their possession. Defendant testified that this property consisted of some planks, a stepladder and a couple of pairs of carpenters' horses. It is not alleged that there is anything unique about any of said items, nor is it shown that their value, obviously a very small amount, is not readily ascertainable. If a proper demand were made and refused, these items or their value could have been recovered in an appropriate action at law. As in *Michigan Bean Co.* v. *Burrell Engineering & Construction Co.,* 306 Mich. 420, where the proofs disclosed no grounds for equitable relief, when the bill of complaint is dismissed, there is left "a plain action at law arising from a dispute over a building contract." In that case, the Court said:

"The decree awarded money damages to plaintiff against Burrell for failure to complete the contract, defective workmanship, delay in performance, and overpayment. * * * In granting plaintiff a money decree, he (the judge) necessarily was called upon to determine whether the contract was for a fixed amount, as plaintiff contended, or for cost plus

a percentage, as claimed by defendant. This, however, was purely a question of fact that arises so frequently in an action at law. It was not a question that called for the exercise of equity jurisdiction."

A further and quite conclusive reason for dismissing plaintiff's bill of complaint is that the only ground alleged for equitable relief is for an injunction restraining removal of the building material by defendant; but there is no allegation in the bill of the value of such materials as exceeding $100. Hence it follows that essential jurisdictional facts were not alleged, and the bill for that reason should be dismissed. See 3 Comp. Laws 1929, § 13943 (Stat. Ann. § 27.544); *Wallace* v. *Sortor,* 52 Mich. 159.

We called to the attention of respective counsel that this was an ordinary suit at law improperly brought on the equity side of the court. Counsel for plaintiffs conceded that the suit was not one properly in equity, while defendant claimed that the appeal should be dismissed for reasons heretofore stated. In view of the close questions of fact involved herein and the parallel presented to *Michigan Bean Co.* v. *Burrell Engineering & Construction Co., supra,* which follows a long line of cases therein cited, we are constrained to hold as we did in that case. Therefore a decree may be entered dismissing the bill and cross bill without prejudice to the rights of either party to transfer the case to the law side of the court by filing a declaration within 30 days after the date of the decree. No costs to either party.

Carr, C. J., and Bushnell, Sharpe, Boyles, Reid, North, and Dethmers, JJ., concurred.